IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PPL SERVICES CORPORATION, | : | |
| Petitioner, | : | |
| v. | : | CIVIL ACTION |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 1600, | : | NO. 11-3273 |
| Respondent. | : | |

## MEMORANDUM OPINION

**Tucker, J.**                                                                                                          November ___, 2012

Presently before the Court are cross-motions for summary judgment: Respondent's Motion for Summary Judgment (Doc. 11); Petitioner's Response in Opposition thereto (Doc. 15); Petitioner's Motion for Summary Judgment (Doc. 13); and Respondent's Response and Reply in Opposition thereto (Docs. 14 & 16). Upon consideration of the parties' motions with briefs and exhibits, and for the reasons set forth below, Respondent's motion will be **GRANTED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner PPL Services Corporation ("PPL" or the "Company") brings the instant action against Respondent International Brotherhood of Electrical Workers, Local 1600 ("IBEW" or the "Union") asking this Court to review and vacate the arbitration award granted to Noreen Crawford ("Grievant") on March 24, 2011. Petitioner alleges the arbitrator's award fails to draw its essence from the collective bargaining agreement ("CBA") entered into between PPL and IBEW, and therefore should be vacated pursuant to 42 Pa. C.S. § 7301, et seq.

1

PPL operates the Susquehanna Nuclear Power Facility and once a year the facility undergoes a scheduled outage for maintenance purposes. In order to perform the maintenance work during the outage, PPL's employees and contractors need to gain access to the facility. Every day that an employee enters the power plant, their identification is verified, they are checked for weapons, and their permission to enter the facility is confirmed. Between early January and early March of each year, access processing work is performed through a multi-step procedure that every person must complete before they can be considered for unescorted access to the plant.

Prior to 2008, the access processing work was performed manually, primarily by Steno/Clerk general employees ("Steno/Clerk") on a voluntary overtime basis. However, in early 2008, PPL began using bar code scanning in an effort to improve efficiency in the access processing work. When PPL implemented the bar code scanning technology, the workers to be used for that work were required to complete eight (8) hours of additional training on Saturday, January 12, 2008, on an overtime basis. Five (5) Special Temporary-Clerk/Steno employees ("Spec/Temps") were selected for this training and they began access processing on January 14, 2008.

On January 30, 2008, Grievant, a Steno/Clerk, filed a grievance alleging that Steno/Clerks had not been given the opportunity to work the overtime access processing that was given to the Spec/Temps. During a grievance meeting, PPL maintained that it was not in violation of the CBA and that the Spec/Temps were the individuals who had been properly trained on the system that was necessary to complete the access processing. Steno/Clerks did not receive the training and thus were not assigned access processing overtime work.

On January 13, 2011, an arbitration hearing was held before Arbitrator John M. Skonier

("Abitrator"), in Breinigsville, Lehigh County, Pennsylvania. On March 24, 2011, Arbitrator Skonier issued an arbitration award in favor of Grievant directing Petitioner to pay Grievant 42.5 hours at time and one-half of her 2008 wage rate at the time the 2008 access processing work took place.

On April 25, 2011 Petitioner filed a Petition for Review and to Vacate Arbitration Award in the Court of Common Pleas of Lehigh County. On May 19, 2011, IBEW removed the case to the United States District Court in the Eastern District of Pennsylvania. On March 1, 2012, Respondent filed a motion for summary judgment and Petitioner filed a response in opposition on March 23, 2012. In addition, on March 2, 2012, Petitioner filed a motion for summary judgment and Respondent filed a response in opposition on April 2, 2012. The Court now considers the substance of these cross-motions for summary judgment.

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed R. Civ P. 56(c); see also Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. See Anderson, 477 U.S. at 248; Fakete v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir. 2002).

The moving party must show that if the evidentiary material of record were reduced to

admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 327 (1986). Once the moving party has carried its burden under Rule 56, "its' opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007). Under Fed. R. Civ. P. 56(e), the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249; Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. See Horsehead Indus., Inc. v. Paramount Communications, Inc., 258 F.3d 132 (3d Cir. 2001). The court must award summary judgment on all claims unless the non-moving party shows through affidavits or admissible evidence that an issue of material fact remains. See, e.g., Love v. Rancocas Hosp., 270 F.Supp.2d 576, 579 (D.N.J. 2003); Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F.Supp.2d 324, 330 (D.N.J. 2002).

### B. Vacating an Arbitration Award

If a collective bargaining agreement that is reached between an employer and its employees includes an arbitration clause, it is assumed that having an arbitrator interpret the agreement is the parties bargained for and preferred method of resolving a grievance. Brentwood Medical Assoc. v. United Mine Workers of America, 396 F.3d 237, 240 (3d Cir. 2005). Thus, a

district court's role in reviewing the decision of the arbitrator is very limited as it is not to correct factual or legal errors made by the arbitrator.  Major League Umpires Ass'n v. American League of Professional Baseball Clubs, 372 F.3d 272, 279 (3d Cir. 2004).  A district court cannot vacate an arbitration award "simply because it disagrees with the arbitrator's construction of the contract… or because it believes its interpretation of the contract is better than that of the arbitrator."  News America Publications, Inc. Daily Racing From Div. v. Newark Typographical Union, Local 103, 918 F.2d 21, 24 (3d Cir. 1990) (internal citation omitted).

A district court may only determine whether or not an arbitrator's award "draws its essence" from the collective bargaining agreement.  Brentwood Medical Assoc., 396 F.3d at 240 (citing United Paperworkers Int'l Union, AFL-CLO v. Misco, Inc., 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)).  An arbitrator's award draws its essence from a collective bargaining agreement if "its interpretation can *in any rational way* be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention."  Id. (citing United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379-80 (3d Cir. 1995) (emphasis in original).  As a general rule, district courts must enforce an arbitration award as long as "it was based on an arguable interpretation and/or application of the collective bargaining agreement, and may only vacate it if there is no support in the record for its determination or if it reflects a manifest disregard of the agreement, totally unsupported by principles of contract construction."  Id. (quoting Exxon Shipping Co. v. Exxon Seamen's Union, 993 F.2d 357, 360 (3d Cir. 1993) ) (internal quotation marks omitted).  District courts cannot disrupt an arbitrator's award "even if it finds that the basis for the award is ambiguous or the Court disagrees with the Arbitrator's conclusions under the law."  Citgo Asphalt Refining Co. v. Paper, Allied-Indus., Chemical and Energy Workers Intern. Union Local No. 2-991, 385

F.3d 809, 816 (3d Cir. 2004) (internal citation omitted). Thus, if a district court is satisfied that the award draws its essence from the collective bargaining agreement, "it is without jurisdiction to consider the award further." Id. at 241.

### III. DISCUSSION

By the Court's estimation, Petitioner advances one procedural reason why the arbitration award should be vacated, and four substantive reasons why the arbitration award should be vacated. The Court will examine each in turn.

#### A. Procedural Grounds

PPL argues that the arbitration award does not draw its essence from the CBA because the Arbitrator found that that PPL waived a procedural argument. (Pet'r's Mot. for Summ. J. 11.) PPL alleges that Grievant added an untimely supplement to her grievance and Arbitrator Skonier incorrectly considered it in making his decision. Specifically, PPL claims that the Grievant attempted to amend her grievance to include an exhibit (referring to PPL's process for assigning overtime work) more than ten (10) days after the initial discussion session, in violation of Article III, Section 3.B. of the CBA.[1] Additionally, Petitioner argues that the parties never jointly agreed to waive any time limits with respect to the grievance process and therefore, the exhibit should not have been considered by Arbitrator Skonier in reaching a decision.

IBEW contends that matters of procedural arbitrability, such as waivers of defenses or time limits, are matters for the arbitrator, and not the court, to decide. IBEW alleges that it properly amended its grievance to include the exhibit during the grievance process and PPL's

---

[1] Article III, Section 3.B. provides that grievances must be filed within ten (10) days of the date of the complaint discussion. (J.E. 4A.) Article III, Section 2.A. provides: "[f]ailure to comply with any of the prescribed time periods in each step of the Grievance Procedure contained herein, shall constitute forfeiture of the grievance by the delinquent part unless the parties have jointly agreed to waive such time limits." Id. There is no dispute that the grievance was untimely, or that PPL never consented to waive the untimeliness.

failure to object to the inclusion of the exhibit until the arbitration hearing acted as a waiver of that defense. IBEW claims that PPL was aware of its amended grievance three (3) years before the arbitration hearing and failed to raise an objection; therefore, Arbitrator Skonier was correct in his determination that the defense was waived.

Although substantive arbitrability (*i.e.*, the question of whether the parties agreed to arbitrate) is usually left to a court's determination, procedural questions (including issues related to time limits, notice, laches, estoppel, waiver, and other conditions) are matters for the arbitrator to decide. Puelo v. Chase Bank U.S.A., N.A., 605 F.3d 172, 178-79 (3d Cir. 2010) (internal citations omitted). Nonetheless, PPL cites a number of cases, in particular Teamsters Local 312 v. Matlack, Inc., 118 F.3d 985 (3d Cir. 1997), aff'g 916 F. Supp. 482 (E.D. Pa. 1996), in support of its argument that IBEW is mistaken in its position that procedural questions should be decided by the arbitration. See e.g., Teamsters Local 312, 118 F.3d at 995 (quoting Int'l Bhd. of Electrical Workers, Local Union 1823 v. Wgn of Colo., Inc., 615 F. Supp. 64, 66 (D. Colo. 1985) ("Procedural irregularities… may also result in such fundamental unfairness as to warrant the vacation of an arbitral award.")

In Teamsters Local 312, the Third Circuit held that the district court was warranted in vacating an arbitration award in favor of the union. The district court had found that an arbitrator's decision to rule in favor of the union on both procedural and substantive issues was a procedural irregularity because the arbitrator explicitly told both parties he would only rule on the procedural issue at the first hearing. Teamsters Local 312, in turn, cited a number of other cases on which PPL also relies:

> Examples of procedural irregularities that have merited district court suspension of arbitration awards are varied. See Textile Workers Union of America v. American Thread Co., 291 F.2d 894, 901 (4th Cir.1961) (affirming denial of union's enforcement request because arbitrator went outside record and based decision on findings from a

7

different arbitration proceeding); Harvey Aluminum v. United Steelworkers of America, 263 F.Supp. 488 (C.D.Cal. 1967) (arbitration award remanded where arbitrator refused to admit certain evidence in rebuttal without giving parties warning about application of evidentiary rules); Electrical Workers, 615 F.Supp. at 67-68 (vacating arbitration board award and remanding because neutral arbitrator rendered decision without obtaining the signatures of the partisan arbitrators, so that there was a "lack of evidence of any significant decision-making process by the majority of the board").

118 F.3d at 995.

The Court disagrees with PPL and finds that there are no procedural irregularities present in the instant case that would allow this Court to vacate Arbitrator Skonier's award. The holdings in Teamsters Local 312 and all the cases cited therein on the procedural irregularity issue are not analogous to the situation in this case. Further, contrary to PPL's assertions, the district court in Teamsters Local 312 *did not* vacate the arbitrator's award on procedural grounds. Rather, the district court vacated the substantive portion of the award only, and enforced the arbitrator's procedural rulings. Additionally, Arbitrator Skonier did not base his decision on a different arbitration proceeding or refuse to admit evidence by either party. PPL simply disagrees with Arbitrator Skonier's decision to waive PPL's belated timeliness defense to IBEW's additional claims to its grievance because the defense was not raised until the arbitration hearing. Accordingly, the Court finds this is not the type of procedural irregularity that would require this Court to overturn the arbitration award.

B. **Substantive Grounds**

1. The Arbitrator Did Not Create a Duty for PPL to Train Employees for Overtime.

PPL first argues that the arbitration award cannot rationally be derived from any language in the CBA because it creates a duty for PPL to train employees for overtime. (Pet'r's Mot. for Summ. J. 8.) PPL acknowledges that it theoretically *could* have trained the

8

Steno/Clerks to perform the bar code access processing; however, PPL contends, the CBA does not impose a duty upon the company to train one particular group of employees for a new set of duties simply so they have the ability to perform overtime work outside of their normal job requirements. (Id. at 9.) Petitioner alleges that Arbitrator Skonier stepped outside of the CBA and created a duty for PPL that did not exist in the agreement by stating that Steno/Clerks could "retain the option to work overtime in new technology." (Id.)

PPL further argues that "industrial common law" also does not permit the arbitrator's decision. PPL states that CBAs must be interpreted in light of common industrial practices. (Id.) (citing United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960)). In United Steelworkers, the Supreme noted: "the labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law-the practices of the industry and the shop-is equally a part of the collective bargaining agreement although not expressed in it." 363 U.S. at 581-82 (1960). In other words, custom and past practice (the so-called "law of shop") also play a fundamental role in the interpretation of arbitration agreements. PPL contends that it never adopted a custom or practice that would impose this type of duty. Thus, while PPL may have offered the access processing overtime work to Steno/Clerks in the past, PPL claims that no special training was required for that work. (Pet'r's Mot. for Summ. J. 10.) Accordingly, PPL argues there is no evidence of any past practices requiring the company to train Steno/Clerks in this technology. (Id. at 10-11.) For its part, IBEW counters that PPL is taking one sentence in the arbitration award out of context and over-reading it.[2]

---

[2] Arbitrator Skonier's discussion of the "duty" issue, in context, is as follows:

> All of the testimony in general reveals that the annual access processing work was primarily performed by Steno/Clerks. While one Spec/Temp may have been used to assist the Steno/Clerks in the performance of the access processing work, it is apparent that the practice was to primarily use Steno/Clerks for this work. As explained by Supervisor of Security Access and Training John Lines, during the 2007 preparation for the upcoming 2008 access processing work, it was determined that voluntary assignment of overtime work

9

The Court agrees with IBEW. Arbitration hearing testimony and other evidence in the record indicate that the Company has a history of assigning access processing overtime work to Steno/Clerks. (J.E. 1 at 6.) Indeed, PPL concedes that Steno/Clerks performed the access processing work in the past. Specifically, between 2003 and 2007, PPL requested that Steno/Clerks volunteer for the access processing work. (Id. at 11-12.) While there may have been times when one Spec/Temp may have been used to assist with the access processing work, the primary opportunity and responsibility for this work fell to the Steno/Clerks. (Id. at 16.) Additionally, the evidence shows that there is a prearranged process for assigning overtime work, and there was arbitration testimony from Sandra Lines, Manager of Nuclear Support for PPL, that these rosters were used to equalize overtime work for Steno/Clerks, not for Spec/Temps. (Id.)

Despite the fact that new bar code technology was introduced in 2008 to complete the access processing work, Arbitrator Skonier noted the testimony of John Lines that using the technology was no more complex than scanning groceries at a check-out counter. (Id. at 17.) Arbitrator Skonier stated that the Steno/Clerks should have been given the opportunity to participate in the one-day training session for this relatively simple task. (Id.) The Court finds that, despite PPL's contentions to the contrary, nowhere in his decision does Arbitrator Skonier

---

      for access processing was not producing a sufficient number of Steno/Clerks[,] so a decision was made to not assign Steno/Clerks but rather to hire Spec/Temps to perform the work in 2008. This decision failed to recognize the past of primarily having Steno/Clerks perform access processing work and failed to provide the Steno/Clerks an opportunity to do the work. The Steno/Clerks were never offered the one day training on the bar code scanning procedure and were effectively denied any of the 2008 overtime work.

      By Mr. Lines' testimony, the task of utilizing the bar code scanning was no more complex than a "grocery store clerk scanning groceries." **As such, the Steno/Clerks could have been given the one day-training in the performance of this aspect of the bar code access processing work, however, this was not done.**

      While the Company can assign duties, it may not ignore the contract or an established past practice. While there are appropriate means of altering a past practice, these were not followed here....

(J.E. 1 at 16-17.) (emphasis added to indicate what IBEW identities as the "offending sentence")

create a new requirement that the Company provide training for certain employees. Arbitrator Skonier merely concluded that based on the past practice of assigning the access processing work to Steno/Clerks prior to 2008, the Steno/Clerks should have been given priority in receiving the work even if it meant providing them with a small amount of training. (Id.) Thus, the only duty the Arbitrator imposed on PPL was the duty to comply with the terms of the CBA by assigning overtime work to the employees who usually performed the work. Additionally, the Court agrees with IBEW's assertion that the company could have first asked for Steno/Clerk volunteers to perform the access processing work and if an insufficient number of Steno/Clerks volunteered, then the company could have assigned the work to Spec/Temps. The Company simply elected not to do this.

Thus, despite PPL's allegations that the award creates a new duty that it was not previously responsible for, Arbitrator Skonier's award is rationally based on an arguable interpretation of the CBA. The arbitration award therefore draws its essence from the CBA and Arbitrator Skonier did not use his own "brand of industrial justice."

> 2. The Arbitrator Correctly Took Into Account Exhibit U-7 in Determining Whether or Not PPL Violated the CBA by Assigning the Work to Spec/Temps Rather than Steno/Clerks.

PPL next argues that Arbitrator Skonier incorrectly relied on documents outside of (and never merged into) the CBA in reaching his decision. (Pet'r's Mot. for Summ. J. 11.) PPL takes particular issue Arbitrator Skonier's reliance on an email (labeled "Exhibit U-7" during the arbitration) from employee Jane Grant to various employees regarding the equalization of overtime among the Steno/Clerks. (Id.; see also J.E. 4L: "Steno/Clerk Rosters for Prearranged/Holdover Overtimes and Callouts.") PPL claims that this email was related to overtime for work that Steno/Clerks normally performed and did not give rise to a duty for PPL

11

to award different work to Steno/Clerks or train them to perform tasks they had not previously performed. (Pet'r's Mot. for Summ. J. 11.) PPL also states that Steno/Clerks did not have an exclusive right to this work because in the past Steno/Clerks, Spec/Temps, and other employees pitched in to get access processing work done. (Id. at 12.)

As IBEW notes, this is a strange argument for PPL to be make. The email's self-proclaimed purpose was to establish the Company's "revised process for allocating overtime to steno/clerks [sic]." (J.E. 4L.) The email goes on to state that the justification for the revised process was "to better equalize overtime opportunities through the job classification of Steno/Clerks." (Id.) This new approach was necessitated by the "large disparity" in overtime work among Steno/Clerks. (Id.) The email then states that the Company determined "that a more formal process, more closely aligned with the BU Agreement was needed." (Id.)

As IBEW rightly notes, the phrases "equalize overtime opportunities throughout the job classification," "ensure equalization of overtime," and "callout and prearranged overtime" echoes language in Exhibit H of the CBA. (J.E. 4A: "Collective Bargaining Agreement Covering the Period from 2006 to 2010.") Based on the language used in Exhibit U-7, it would be reasonable to think that the purpose of Exhibit U-7 was to establish a process that was consistent with the CBA. Indeed, Arbitrator Skonier decided that "the Union's use of Exhibit U-7 is appropriate to identify the manner in which overtime rosters of Steno/Clerks are utilized," which had also been testified to by PPL's witness Sandra Lines under cross-examination. (J.E. 1 at 16.)

The Court finds it was entirely rational for Arbitrator Skonier to use Exhibit U-7 as a means of interpreting Exhibit H of the CBA. Exhibit U-7 is evidence of PPL's intent to comply with and implement Exhibit H of the CBA. The mere fact that Arbitrator Skonier considered Exhibit U-7 as probative evidence of PPL's intent does not mean that the arbitration award does

12

not draw its essence from the CBA. Notably, this section of PPL's brief is completely devoid of citation to any legal authority which states that extrinsic evidence of a party's intent cannot be used in interpreting a CBA. Indeed, basic principles of contract construction and interpretation suggest that PPL would be hard-pressed to find any such authority See e.g., Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993) ("Before making a finding concerning the existence or absence of ambiguity, we consider the contract language, the meanings suggested by counsel, *and the extrinsic evidence* offered in support of each interpretation.") (emphasis added); see also id. ("Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning. These basic principles of contract construction are not inconsistent with federal labor policy.")

Arbitrator Skonier concluded that by excluding the Steno/Clerks from the access processing work in 2008 and assigning the work to the Spec/Temps, PPL violated Exhibit H of the CBA and its own overtime procedures as outlined in Exhibit U-7. In other words, Exhibit U-7 helped Arbitrator Skonier establish that PPL had committed a contractual violation. The Court finds this to be a rational interpretation of the CBA.

   3. <u>The Arbitrator's Award Does Not Violate the CBA Because He Awarded Back Pay to the Grievant in the Amount of Overtime She Did Not Work.</u>

PPL next argues that Arbitrator Skonier ignored PPL's policy of equalization of overtime in awarding Grievant "all of the overtime work involved in the training." (Pet'r's Mot. for Summ. J. 16.) It is undisputed that Grievant testified that she worked more overtime than any Spec/Temp during the time period in question. There was no evidence that she would have been able to perform the access processing overtime work even if she was given the opportunity to do so. In response, IBEW has provided an extensive outline of the testimony and evidence

Arbitrator Skonier relied on in determining the amount of the award granted to Grievant. (Resp't's. Resp. Pet'r's Mot. for Summ. J. 11-13.) The Court will not repeat this outline here. However, the Court notes that the award granted to Grievant does not appear to have simply been "all of the overtime work involved in the training," as PPL suggests. Rather, the figure appears to have been for days when the Grievant worked no overtime and the Spec/Temps worked overtime. (See J.E. 4Q.) That is, days when Grievant was available to work overtime and theoretically could have.

The Court acknowledges that in light of (1) PPL's policy of equalizing overtime and (2) Grievant's testimony that she had already worked more overtime than anyone else during the relevant time period, it is somewhat speculative whether Grievant would have been given access processing work (had she been offered it by PPL) even on the days when she was available. However, other than making the blanket, conclusory assertion that the arbitration award allows Grievant to "hog seniority," PPL provides no formula for how the award should or could have been configured differently. Once again, PPL provides no citation to any legal authority which supports its contention that this award warrants the drastic step of vacating the arbitration decision. To the contrary, the Supreme Court has held:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. **This is especially true when it comes to formulating remedies**. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.
>
> United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)

(emphasis added). Nothing in PPL's briefs adequately suggests how the award is unfaithful to CBA. Accordingly, the Court cannot find that the award fails to draw its essence from the CBA.

####  4. The Arbitrator's Award Does Not Violate the Management Rights Clause of the CBA.

Finally, PPL contends that the arbitration award violates the "Management Rights" Provision of the CBA.[3] (Pet'r's Mot. for Summ. J. 16-17.) PPL argues that the CBA allows management to introduce new methods in order to improve efficiency and to determine which employees will be used to perform them. (Id. at 17.) PPL alleges that Arbitrator Skonier ignored this provision when he decided that the company had an obligation to award the new access processing work to the Steno/Clerks and train them to do the work. (Id.) IBEW counters that the arbitration award cannot be vacated on these grounds because one (1) the company did not raise this argument before Arbitrator Skonier and (2) the Management Rights Provision is inapplicable.

The Court agrees with IBEW on both accounts. PPL did not raise this argument before Arbitrator Skonier. Further, even if it had, the portion of the Management Rights Provision cited by PPL (which concerns the hiring of "new employees" and introducing "new methods for improving operating efficiency") has nothing to do with PPL's obligations to existing employees like the Steno/Clerks and the assignment of work within the bargaining unit. Moreover, no one is debating PPL's right to introduce new technology to improve the efficiency of the access processing work. This case merely stands for the proposition that it is violation of its CBA with IBEW for PPL to assign overtime work to one classification of employee over another classification of employee when that work has <u>usually and customarily</u> been performed by the other classification.

In sum, the Court finds that PPL's argument here mostly reiterates the "new duty"

---

[3] The Management Rights Provision, Article II, Section 5.C. of the CBA, provides: "Other functions of Management include the right to…select and hire new employees and determine the qualifications needed;…and introduce new methods to improve efficiency. (J.E. 4A.)

15

argument it advanced in Section III.B.1., supra.  For the aforementioned reasons, the Court can also dispense with this argument.

### C.  Attorney's Fees

IBEW argues that it should be awarded reasonable attorney's fees because PPL has no justification for resisting the arbitration award.  (Resp't's. Mot. for Summ. J. 21-22.)  IBEW states that since Arbitrator Skonier's decision was based on a rational interpretation of the CBA, PPL had no chance to prevail on its motion and thus no reason for the appeal.

When actions are filed in an attempt to get one party to abide by an arbitration award, attorneys' fees are generally awarded if the resisting party acts without justification or does not have a reasonable chance to prevail.  Chauffeurs, Teamsters, and Helpers, Local Union No. 765 v. Stroehmann Bros. Co., 625 F.2d 1092, 1094 (3d Cir. 1980); United Steelworkers of America v. Interpace Corp., 447 F. Supp. 387, 393 (W.D. Pa. 1978); NF&M Corp. v. United Steelworkers of America, 390 F. Supp. 266, 271 (W.D. Pa. 1975), aff'd on other grounds, 524 F.2d 756 (3d Cir. 1975); District 50 UMW v. James Julian, Inc., 341 F. Supp. 503, 508 (M.D. Pa. 1972).

The Court disagrees with IBEW, as this is not a case where PPL was wholly without justification in refusing to initially comply with the arbitration award or without a reasonable chance to prevail on the merits.  Therefore, the Court will not grant the Respondent reasonable attorney's fees.

### IV.  CONCLUSION

For the reasons set forth above, this Court will **DENY** Petitioner's Motion for Summary Judgment.  The Court will **GRANT** Respondent's Motion for Summary Judgment and in doing so will dismiss Petitioner's Petition to Vacate the Arbitration Award, confirm the Arbitration Award, and order and direct Petitioner to comply with the Arbitration Award.  However, the

16

Court will **DENY** Respondent's request for attorney's fees as this is not a case where Petitioner was without justification in refusing to initially comply with the Arbitration Award or without a reasonable chance to prevail on its motion.

An appropriate order follows.